UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CV 13              5784

------------------------------------------ X

GERALDINE POLICASTRO, TIFFANI POLICASTRO,
AND KIMBERLY POLICASTRO

**COMPLAINT**

Plaintiffs,

-against-

**JURY TRIAL DEMANDED**

THE CITY OF NEW YORK; NYPD DET. JOHN
MAZZELLA-SHIELD #4869;  NYPD, P.O. "JOHN
DOES 1-10; individual defendants sued in
their individual and official capacities.

MATSUMOTO, J.

Defendants.

------------------------------------------ X

### PRELIMINARY STATEMENT

1.    This is a civil rights, common law, and tort

action in which plaintiffs seek relief for the violation of

their rights secured by the laws of the State of New York; New

York State Constitution; 42 U.S.C. §§ 1983 and 1988; and the

Fourth, Fifth, Sixth, and Fourteenth Amendments to the United

States Constitution.  Plaintiffs' claims arise from an incident

that arose on or about October 27, 2010.

2.    On October 27, 2010, The City of New York and

members of the New York City Police Department subjected

plaintiffs to, among other things, unlawful search and seizure,

unreasonable force, false arrest, failure to intervene and

respondeat superior liability.  Plaintiff seeks compensatory and

punitive damages from the individual defendants, compensatory

damages from the municipal defendant, declaratory relief, an award of costs and attorney's fees, and such other and further relief as the Court deems just and proper.

### JURISDICTION & VENUE

3.    Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 and 1367 in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983 and 1988; and the First, Fourth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

4.    This is an action in which the Plaintiffs seek relief for the violation of their rights as guaranteed under the laws and Constitution of the United States and guaranteed under the laws and Constitution of the State of New York.

5.    Venue is properly within this Court as the actions and conduct, about which the Plaintiffs complain, took place within the geographic boundaries of this Court's jurisdiction; the parties do business and/or reside and/or have offices for doing business within the geographic boundaries of this Court's jurisdiction; and the Plaintiff resides within the geographic boundaries of this Court's jurisdiction.

6.    The Plaintiff Geraldine Policastro has filed a timely Notice of Claim within 90 days of the adjournment in

contemplation of dismissal of the charge, the concluding aspect of the transaction out of which the litigation arises.

## PARTIES

7. Plaintiff Geraldine Policastro is an American citizen and resident of the City of New York, Kings County, and the State of New York.

8. Plaintiff Tiffani Policastro is an American citizen, the daughter of Geraldine Policastro and a resident of the City of New York, Kings County, and the State of New York.

9. Plaintiff Kimberly Policastro is an American citizen, the daughter of Geraldine Policastro and a resident of the City of New York, Kings County, and the State of New York.

10. The Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which, under the enabling law of the State of New York, has, among other powers, the power to maintain a police department for the purpose of protecting the welfare of those who reside in the City of New York.

11. Defendant NYPD Detective John Mazzella, shield #4869 is an New York City Police Department detective employed with the City of New York Police Department, 740 Command or other as yet unknown assignment, who violated plaintiff's rights as described herein.

12.   Defendants NYPD Police Officers "JOHN DOES 1-20" are New York City Police Officers employed with the City of New York Police Department, employed with the 68th precinct or other as yet assignment, who violated plaintiff's rights as described herein.

### STATEMENT OF FACTS

13.   The Plaintiffs are Geraldine Policastro, Kimberly Policastro and Geraldine Policastro.

14.   At the time of the incident, the plaintiffs resided at 1761 60th Street First Floor Apartment, Brooklyn, New York.

15.   1761 60th Street, Brooklyn New York is a legal three family residence, with a one family residence in the basement, a one family residence on the first floor and one family residence on the 2nd floor.

16.   Plaintiffs occupied the first floor apartment in the building.

17.   Additional persons who resided with plaintiff on the first floor apartment in the building included, Geraldine Policastro, Kimberly Policastro, her daughter, Tiffani Policastro her other daughter, both of whom are plaintiffs in this lawsuit, and 5 of her children with ages ranging from 7 to 12 years who were at school at the time.

4

18. The basement apartment has its own entrance and is a legal unit, separate and apart from the other units in the building.

19. Geraldine is now 52 years old. At the time of her arrest she was 49 years old.

20. Geraldine was born and raised in Brooklyn, New York.

21. Geraldine is the mother of 14 children.

22. Kimberly Policastro is one of Geraldine's daughters.

23. At the time of her arrest, Kimberly Policastro approximately was 19 years old.

24. At the age of 11, Kimberly Policastro was the recipient of a heart transplant.

25. At the age of 15, Kimberly Policastro was diagnosed with cancer.

26. At the time of the incident, Kimberly Policastro had a metal port implanted in her body to receive medication intravenously.

27. Tiffani Policastro is another of Geraldine's daughters.

28. At the time of her arrest Tiffani Policastro was 16 years old.

29.  On October 27, 2010, plaintiffs' home was illegally raided, and plaintiffs were falsely arrested and maliciously and falsely charged with criminal offenses, and otherwise subjected to an excessive and unreasonable custodial detention and all association therewith.

30.  On October 27, 2010 at approximately 10:30am, at and in the vicinity of 1761 60th Street, First Floor apartment, Brooklyn, NY, several police officers, and Detective John Mazzella acting in concert and sometimes independently, committed the following acts against the plaintiffs.

31.  On October 27, 2010 at approximately 10:30am, at and in the vicinity of 1761 60th Street, First Floor apartment, Brooklyn, NY several police officers, and Detective John Mazzella acting in concert and sometimes independently, without either consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiffs (or any third person) had committed a crime, unlawfully entered 1761 60th Street, First Floor apartment, Brooklyn, NY.

32.  The defendant Detective John Mazzella and the officers broke into 1761 60th Street, First Floor apartment, Brooklyn, NY.

33.  If the defendant officers had a search warrant, it was issued upon the basis of extremely unreliable

6

information, the unreliability of which was withheld from the issuing magistrate.

34. If the defendant officers had a search warrant, they obtained it by failing to properly supervise and verify the reliability of an informant against NYPD policy and procedures to ensure the reliability of the confidential informant and the confidential informant's information before obtaining the warrant.

35. While breaking into the first floor apartment, the defendants, maliciously and unnecessarily broke down the door, entered the apartment with shields and helmets, and drew their firearms at plaintiffs Geraldine Policastro, Kimberly Policastro and Tiffani Policastro, a minor.

36. Once defendants entered 1761 60th Street, First Floor apartment, Brooklyn, NY, the plaintiffs were not free to disregard the defendants' questions, walk away. or leave the scene.

37. While inside the first floor apartment, the police officers, without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiffs (or any third person) had committed a crime falsely arrested plaintiffs.

38. During the arrest of plaintiff Geraldine Policastro, the defendant officers, maliciously, gratuitously

and unnecessarily, grabbed plaintiff Geraldine Policastro, while in her Pajamas, threw her onto the sofa, twisted plaintiff's arms and placed excessively tight handcuffs on her wrists. Those defendants who did not touch plaintiff Geraldine Policastro, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

39.   The police officers searched plaintiff Geraldine Policastro and found no evidence of weapons, contraband, narcotics, or illegal activity on her person.

40.   During the arrest of plaintiff Tiffani Policastro, the defendant officers, maliciously, gratuitously and unnecessarily, grabbed plaintiff Tiffani Policastro, while in her t-shirt and panties, pulled her down a flight of stairs, pulled her arms behind her back, placed excessively tight handcuffs on her wrists, placed her up against a wall, took her picture while wearing a t-shirt and panties and threw her on a sofa.   Those defendants who did not touch plaintiff Tiffani Policastro, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

41.   The police officers searched plaintiff Tiffani Policastro and found no evidence of weapons, contraband, narcotics, or illegal activity on her person.

42.   During the arrest of Kimberly Policastro defendant officers, maliciously, gratuitously and unnecessarily,

grabbed plaintiff Kimberly Policastro, twisted plaintiff's arms and placed excessively tight handcuffs on her wrists and lead her to the sofa.  Those defendants who did not touch plaintiff Kimberly Policastro, witnessed these acts, but failed to intervene and protect plaintiff from this conduct.

43.  The police officers searched plaintiff Kimberly Policastro and found no evidence of weapons, contraband, narcotics, or illegal activity on her person.

44.  Additionally, the police officers, unreasonably, unnecessarily, and retaliatorily, kept all plaintiffs in handcuffs while they searched the apartment.

45.  While searching the apartment, the police officers, unreasonably, maliciously, and unnecessarily damaged the apartment and plaintiffs' personal property.

46.  While breaking into the home, defendants demanded "guns and coke"

47.  Geraldine Policastro asked where the warrant was, but they never showed her a warrant.

48.  The handcuffs placed on Geraldine Policastro were excessively tight.

49.  Geraldine Policastro asked the officers to loosen the handcuffs but they refused.

50.  Geraldine Policastro asked the officers if she could take her medication for high blood pressure, and various heart conditions.

51.  The officers denied her requests for her medication.

52.  Geraldine Policastro began to have difficulty breathing, and an ambulance was called.

53.  An ambulance came and took Geraldine Policastro to Maimonides Hospital, where she was handcuffed to a bed and evaluated.

54.  From Maimonides Hospital, Geraldine Policastro was taken to a precinct where they began to process her arrest.

55.  From the precinct, they took her to central booking to continue to process her arrest, and then she was returned to the 68th precinct to await arraignment.

56.  While, the officers were searching the home, officers took a handcuffed Tiffani Policastro and took her upstairs to her bedroom.

57.  While in her bedroom, police officers questioned Tiffani Policastro, asking her where the stuff was at.

58.  Tiffani Policastro was never told of her rights.

59.  When Tiffani Policastro stated that she did not know what "stuff" the police officers were referring to, police officers threatened to tear her room apartment if she did not

10

tell them where the stuff was.  The officers told her that "we have pictures of you" and stated that if she did not tell them where the stuff was, they would also "bring in the dogs".  When she stated that she did not know what stuff they were talking about, they proceeded to destroy the bedroom and the property in the room.

60.  The officers, then told Tiffani Policastro to put some pants on.  Tiffani Policastro put on the first pair of pants she saw, some sweat pants, and was then taken downstairs and placed on the sofa.

61.  After being brought downstairs, Tiffani Policastro, requested her asthma medicine.  The police officers denied her request, and told her that she would be fine.

62.  She then asked to be taken outside to get some fresh air, the officers took her to the porch, and then began to question her again.

63.  Tiffani Policastro was then placed in a police car and transported to the 68th precinct, wearing "flip-flop" sandals on her feet, sweat pants, and a t-shirt.  While in the police car, Tiffani Policastro asked the officers to loosen the handcuffs but they did not.

64.  Once in the 68th precinct, Tiffani's arrest was processed and she was placed on a bench and handcuffed by one hand.  On her free hand she noticed bruising on her wrist.

65.   At approximately 9:00PM, Tiffani Policastro, was told that she was free to go.  She asked for transportation home or a metrocard, and the officers told her that they did not do that, and that she should leave the precinct immediately before they changed their minds.  Tiffani was given a Desk Appearance Ticket, and left the precinct wearing flip-flop sandals, sweat pants and a t-shirt.

66.   Tiffani walked home over two miles, in the rain with her sister Kimberly Policastro who was also arrested in the raid.

67.   While officers were searching the home, Kimberly Policastro police officers asked Kimberly Policastro, where the guns and the coke were.

68.   Kimberly Policastro was then placed in a police car with her sister Tiffani and taken to the 68th precinct.

69.   While in the police car, Kimberly Policastro told the officers that the handcuffs were to tight, and that the metal handcuffs were causing her to be shocked, because of the metal port that she has.  The officers told her that they would loosen the handcuffs when they arrived at the precinct.

70.   Once at the 68th precinct, Kimberly Policastro was handcuffed to a pole while sitting on a bench, the officers did not loosen the handcuffs, and she saw bruises on her wrists. While she was handcuffed, the handcuffs caused her to feel

electric shocks throughout her body because of the metal port inside of her.  When Kimberly Policastro explained this to the officers, they did not take any action.

71.  At approximately 9:00PM, Kimberly Policastro, was told, that she was free to go.  She asked for transportation home or a metrocard, and the officers told her that they did not do that, and that she should leave the precinct immediately before they changed their minds.  Kimberly was given a Desk Appearance Ticket, and left the Precinct.

72.  Kimberly walked home over 2 miles, in the rain with her sister Tiffani Policastro.

73.  No contraband was ever found on any of the plaintiffs, nor was any contraband found in the plaintiffs' home, 1761 60th Street, First Floor Apartment, Brooklyn, New York.

74.  While plaintiffs were incarcerated at the 68th precinct and Central Booking, awaiting arraignment, the police officers, pursuant to a conspiracy, falsely and maliciously told the Kings County District Attorney's Office that plaintiffs had committed crimes; and based on these false allegations the New York County District Attorney's Office initiated a prosecution against plaintiff Geraldine Policastro, under Docket Number 2010KN085780.

75.   Desk Appearance Tickets were issued to Kimberly and Tiffani Policastro.

76.   To cover up their misconduct, the police officers, intentionally, knowingly and purposely provided false statements and information to cause plaintiffs to be prosecuted.

77.   The police officers, initiated the above-stated malicious prosecution(s) against plaintiffs.

78.   The police officers, lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

79.   The police officers, acted with malice to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

80.   The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiffs.

81.   The above-stated malicious prosecution terminated in plaintiff's favor when the cases against the Policastros were dismissed.

## FIRST CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)

82.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

83.   Defendants unlawfully searched plaintiffs and their home without a warrant, consent, or probable cause.

14

84.   Accordingly, defendants are liable to plaintiffs for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## SECOND CLAIM

### (FALSE ARREST UNDER FEDERAL LAW)

85.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

86.   Defendants falsely arrested plaintiffs without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiffs had committed a crime.

87.   Accordingly, defendants are liable to plaintiffs for false arrest under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## THIRD CLAIM

### (UNREASONABLE FORCE)

88.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

89.   The individual defendants' use of force upon plaintiffs was objectively unreasonable.

90.   The individual defendant officers did not have an objective and/or reasonable basis to use any degree of force against plaintiffs, since plaintiffs were unarmed, compliant, and did not resist arrest.

91.   Those defendants who did not touch the plaintiffs, witnessed these acts, but failed to intervene and protect plaintiffs from this conduct.

92.   Accordingly, the defendants are liable to plaintiffs for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

### FOURTH CLAIM

#### (FAILURE TO INTERVENE)

93.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

94.   Defendants had a reasonable opportunity to prevent the violations of plaintiffs' constitutional rights, but they failed to intervene.

95.   Accordingly, the defendants are liable to plaintiffs for failing to intervene to prevent the violation of plaintiffs' constitutional rights.

### FIFTH CLAIM

#### (DENIAL OF A FAIR TRIAL)

96.   Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

97.   The individual defendants are liable to plaintiff because they intentionally conspired to fabricate evidence against her, fabricating testimony, without due process of law.

16

98.  Furthermore, the individual defendants violated the law by making false statements by drafting and signing a sworn criminal court complaint and false police reports.

99.  Furthermore, the individual defendants violated the law by manipulating and manufacturing evidence to obtain a prosecution and unjust conviction, while performing the function of investigators.

100. The individual defendants were on notice that creating fabricated evidence is a clear violation of law because it is well established that individuals who knowingly use false evidence at trial to obtain a conviction act unconstitutionally and it is redressable in an action for damages under 42 U.S.C. § 1983.

101. The individual defendants are also liable to plaintiff because they intentionally created false information likely to influence a fact finder's or jury's decision by drafting and signing a sworn criminal court complaint and police reports, fabricating testimony and evidence, suppressing and concealing exculpatory material and evidence, and forwarding and presenting false information to a court thereby violating plaintiff's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

## SIXTH CLAIM

### (MALICIOUS PROSECUTION CLAIM UNDER FEDERAL LAW)

102. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

103. The individual defendants are liable to plaintiffs for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious prosecution(s) against plaintiffs by knowingly, intentionally, and maliciously providing false statements (including signed complaints and police reports) to prosecutors and/or the court(s), which alleged plaintiffs had committed various crimes.

104. The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

105. The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

106. The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiffs.

### SEVENTH CLAIM

### (MALICIOUS PROSECUTION CLAIM UNDER STATE LAW)

107. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

108. The individual defendants are liable to plaintiffs for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated a malicious prosecution(s) against plaintiff by knowingly, intentionally, and maliciously providing false statements (including signed complaints and police reports) to prosecutors and/or the court(s), which alleged plaintiffs had committed various crimes.

109. The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

110. The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating the above-stated malicious prosecution(s).

### EIGHTH CLAIM

#### (RESPONDEAT SUPERIOR)

111. Plaintiffs repeat and reallege all the foregoing paragraphs as if the same were fully set forth at length herein.

112. Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiffs.

113. Upon information and belief, defendant City of New York, at all relevant times, was aware that the defendants

19

are unfit officers who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

114. Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action. The County failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them. Moreover, upon information and belief, defendant City of New York failed to adequately investigate prior complaints filed against the individual defendants.

115. Further, defendant City of New York was aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice and/or policy) would stop and/or arrest innocent individuals, based on pretexts, in order to meet productivity goals, in minority and low-income neighborhoods.

116. City of New York is therefore vicariously liable for the aforesaid torts.

**WHEREFORE**, plaintiffs demand a jury trial and judgment and compensatory damages, individually and/or collectively in an amount that exceeds the jurisdiction of all lower courts that would otherwise have jurisdiction as to the above-stated cause of action against all defendants; punitive damages in an amount

to be determined at trial as and for the above-stated causes of action against the individual defendants; together with costs and disbursements of this action and legal fees pursuant to 42 U.S.C. § 1988; and such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief; and such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

DATED:     New York, New York
           October 22, 2013

                              ADAMS & COMMISSIONG LLP,
                              *Attorneys for Plaintiff*
                              65 Broadway Suite 715
                              New York, New York 10006
                              212-430-6590
                              martin@amcmlaw.com

                              By:


                              MARTIN E. ADAMS, ESQ.

21